## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SARAH MORRIS, ASHLEY GALMORE, individually and on behalf of all others similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ZOUP! FRESH SOUP COMPANY, L.L.C., | |
| Defendant. | |

Plaintiffs Sarah Morris ("Plaintiff Morris") and Ashley Galmore ("Plaintiff Galmore") bring this action on behalf of themselves and all others similarly situated against Defendant Zoup! Fresh Soup Company, LLC ("Zoup"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF ACTION

1.      This is a class action lawsuit on behalf of consumers who purchased any of the soups advertised and sold by Zoup in 8-ounce, 12-ounce, 16-ounce, and 32-ounce volumes (the "Subject Soups"). At its various retail locations, Zoup

advertises its soups on signs posted behind the counters, as depicted in the photograph below:



2.     However, unbeknownst to its customers, Zoup systematically underfills the plastic cartons in which the Subject Soups are sold by approximately 18.75% of the represented volume, pursuant to a standard practice in effect at all Zoup locations nationwide.  In other words, Zoup cheats its customers by providing them cartons that contain less of the Subject Soups than what was represented to them and what they paid for.

3.     The Subject Soups are sold in standardized cartons and filled to a "fill-to" line that appears on each carton.  Zoup's standardized procedure, in effect at all Zoup locations nationwide, requires Zoup employees to fill the carton with enough soup to reach – but never enough to exceed – the etched "fill-to" line, which uniformly results in cartons that are underfilled by volumes of 1.5 ounces for an 8-ounce soup, 2.25 ounces for a 12-ounce soup, 3 ounces for 16-ounce soup, and 6

ounces for a 32-ounce soup.  For instance, if a customer purchases a 32-ounce soup, the etched "fill to" line in the carton is so low that the carton sold to the customer will contain a volume of only about 26 ounces of soup.

4.    By intentionally underfilling the Subject Soups, and thereby shortchanging its customers, Zoup has saved millions of dollars in the cost of goods sold and has unjustly enriched itself by taking payment from customers for more product than those consumers were actually provided.  Plaintiffs assert claims on behalf of herself and a nationwide class of purchasers of the Subject Soups for breach of express warranty, breach of the implied warranty of merchantability under Michigan and Illinois law, unjust enrichment, violation of Michigan's Consumer Protection Act, violation of Illinois's Consumer Fraud and Deceptive Business Practices Act, negligent misrepresentation, and fraud.

## **PARTIES**

5.    Plaintiff Sarah Morris is a citizen of Michigan who resides in Lansing, Michigan.  Prior to the filing of this complaint, Plaintiff Morris visited her local Zoup restaurant in Lansing, Michigan approximately once per day, where she would purchase the Subject Soups (typically Broccoli and Cheddar) in volumes of 16 ounces, which cost approximately $9.59.  Plaintiff Morris saw the representations on Zoup's menu that the Subject Soup she purchased would come in the volume of "16 oz.", prior to and at the time of purchase, and understood this to be a

representation and warranty that her Subject Soup would, in fact, contain a volume of 16 ounces of soup. Plaintiff Morris relied on this representation and warranty in deciding to purchase her Subject Soups at the price listed, and this representation and warranty was part of the basis of the bargain, in that she would not have purchased the Subject Soups on the same terms if she had known that they were not, in fact, 16 ounces in volume.

6.  Plaintiff Ashley Galmore is a citizen of Illinois who resides in Chicago, Illinois. Prior to the filing of this complaint, Plaintiff Galmore occasionally visited her local Zoup restaurant in Chicago, Illinois, where she would purchase the Subject Soups (typically Lobster Bisque) in volumes of 12 or 16 ounces, which cost approximately $7.79 or $9.39, respectively. Plaintiff Galmore saw the representations on Zoup's menu that the Subject Soup she purchased would come in the volume of "12 oz." or "16 oz.", prior to and at the time of purchase, and understood this to be a representation and warranty that her Subject Soup would, in fact, contain a volume of 12 or 16 ounces of soup, respectively. Plaintiff Galmore relied on this representation and warranty in deciding to purchase her Subject Soups at the price listed, and this representation and warranty was part of the basis of the bargain, in that she would not have purchased the Subject Soups on the same terms if she had known that they were not, in fact, 16 ounces in volume.

7.     Defendant Zoup is incorporated in Michigan and maintains its principal place of business in Farmington Hills, Michigan.  Zoup operates a chain of restaurants that serve hot soup, sandwiches, bowls, and salads to consumers at over 57 retail locations in the United States, including 14 in Michigan, and having locations in 12 different states.  Zoup's products are sold at over 7,000 other outlet locations throughout the United States, including at the following stores: Sprouts Farmers Market, Walmart, Hannaford, Stop & Shop, Ingles, DeMoulas, Cosentino's, Fresh Thyme, Dorothy Lane, Harmon's, Hugo's, Nature's Own, The Fresh Market, Raley's, Wegman's, Albertsons-Safeway, HEB, Weis Markets, Tony's Fine Foods, and Falls Price Chopper.

8.     Whenever reference is made in this Complaint to any representation, act, omission, or transaction of Zoup, that allegation shall mean that Zoup did the act, omission, or transaction through its officers, directors, employees, agents, and/or representatives while they were acting within the actual or ostensible scope of their authority.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more class members, and at least one member of the

proposed class is a resident and citizen of a state different from Zoup's state of residence and citizenship.

10.     Personal jurisdiction and venue are proper in Michigan and within this judicial District because Zoup maintains its headquarters and principal place of business in Farmington Hills, Michigan, which is within this judicial District.

## <u>FACTS COMMON TO ALL CAUSES OF ACTION</u>

11.     The Subject Soups sold at all of Zoup's retail locations and all outlet locations nationwide are prepared according to a standardized procedure that all persons employed by Zoup and all persons employed at Zoup locations are required to, and in fact do, follow.

12.     Pursuant to Zoup's standardized procedure, whenever a customer orders one of the Subject Soups, the Zoup employee fills a standardized carton (which come in four sizes, one for each of the four portion sizes in which the Subject Soups are advertised for sale: either 8, 12, 16, or 32 ounces) with the ordered variety of soup up to an etched "fill-to" line.  Because each of the four standardized cartons contains a "fill-to" line, the Zoup employee has no discretion to individually determine how much soup to pour into the carton.

13.     Zoup implemented and enforces, and at all times relevant to this action has enforced, the standardized carton-filling procedure described above from within Michigan, at its corporate headquarters in downtown Farmington Hills, Michigan.

Plaintiffs are informed and believe, and thereupon alleges, that Zoup, acting from its headquarters in Michigan, prepared, distributed, implemented, maintained, and oversaw, and continues to prepare, distribute, implement, maintain, and oversee, written policies and procedures, in effect at all Zoup locations nationwide, that require the Subject Soups to be filled up to, but never beyond, the "fill-to" line on the containers in which the soups are sold.

14.     After preparing the Subject Soups for sale pursuant to the company's standardized procedure, Zoup sells the Subject Soups to customers in cartons that are uniformly underfilled by a volume of approximately 18.75% less than the represented volume.

15.     Prior to Plaintiffs' filing of this action, Plaintiffs' counsel purchased and measured Zoup's Subject Soups in different portion sizes, at different stores, and in different varieties of soup.  Regardless of the size or variety of a Subject Soup that was ordered (i.e., either 8, 12, 16, or 32 ounces), or the store at which it was sold, the soup came in a carton that, only when filled entirely to the brim, was physically capable of containing, at most, the exact volume of soup that Zoup advertised for sale and offered to sell (i.e., either 8, 12, 16, or 32 ounces).

16.     However, each of the four sizes of the Subject Soups ordered by Plaintiffs' counsel came in a carton that contained an etched "fill-to" line that fell approximately 18.75% short in volume of the brim, and each of the Subject Soups

that Plaintiffs' counsel purchased were filled close to, but never materially beyond, those "fill-to" lines.  Indeed, none of the Subject Soups purchased by Plaintiffs' counsel were filled anywhere close to the brim of the carton, as would have been required for the volume of the purchased soup to reach the number of ounces advertised on Zoup's menu.

17.    Moreover, Plaintiffs are informed and believe, and thereupon alleges, that Zoup refuses to fill any of the Subject Soups up to the brim of its cartons on the basis that the Subject Soups cannot be safely provided to the customer in cartons filled to the brim.  Thus, under no circumstances will Zoup ever serve any of the Subject Soups in a volume that actually meets the number of ounces represented on the menu.

## **CLASS REPRESENTATION ALLEGATIONS**

18.    Plaintiffs seek to represent a class, or classes, defined as:

**Nationwide Class**: All persons in the United States who, at any time between the commencement of the applicable statutory period and the date of trial in this action, purchased one or more of Zoup's Subject Soups (the "Nationwide Class");

and in addition or in alternative, for Plaintiff Morris, to represent the:

**Michigan Subclass**:  All persons residing in Michigan who, at any time between the commencement of the applicable statutory period and the date of trial in this action, purchased one or more of Zoup's Subject Soups (the "Michigan Subclass");

and for Plaintiff Galmore, to represent the:

**Illinois Subclass**: All persons residing in Illinois who, at any time between the commencement of the applicable statutory period and the date of trial in this action, purchased one or more of Zoup's Subject Soups (the "Illinois Subclass").

19.    Excluded from the Classes (collectively, the "Class" unless otherwise noted) are any persons who made such purchases for the purpose of resale, Zoup's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any entity in which Zoup has a controlling interest.  In addition, Governmental entities and any judge, justice, or judicial officer presiding over this matter and the Members of their immediate families and judicial staff are excluded from the Class.  Plaintiffs reserve the right to revise the Class definitions based upon information learned through discovery.

20.    Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the millions.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Zoup and third-party retailers and vendors.

21.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: whether Zoup advertised to sell the Subject Soups in volumes of 8, 12, 16, and 32 ounces, respectively;

whether Zoup's Subject Soups are sold to customers in cartons that are underfilled; whether Zoup warranted that its Subject Soups were sold in cartons that contained a certain volume of soup for each size; whether Zoup breached any such warranties; and whether Zoup committed statutory and common law fraud by engaging in the foregoing.

22.    The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs purchased Zoup's Subject Soups in reliance on the representations and warranties described above and suffered losses as a result of those purchases.

23.    Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

24.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Zoup's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and

factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Zoup's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT ONE
### Breach of Express Warranty
### (Brought on behalf of Plaintiffs and Nationwide and State Classes)

25.     Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint.

26.     Plaintiffs bring this claim individually and on behalf of the proposed Class against Zoup.

27.     Zoup, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that Subject Soups contained, depending on the size ordered, either 8, 12, 16, or 32 ounces of soup in volume.

28.     In fact, Subject Soups are not fit for such purposes because each of these express warranties is false.  The Subject Soups are uniformly underfilled.  An 8-ounce Subject Soup does not contain a volume of 8 ounces of soup, a 12-ounce Subject Soup does not contain a volume of 12 ounces of soup, a 16-ounce Subject

Soup does not contain a volume of 16 ounces of soup, and a 32-ounce Subject Soup does not contain a volume of 32 ounces of soup.

29.     As a direct and proximate cause of Zoup's breach of express warranty, Plaintiffs and Class members have been injured and harmed because:  (a) they would not have purchased the Subject Soups on the same terms if the true facts were known concerning their volume; (b) they paid a price premium for the Subject Soups due to Zoup's promises that they contained, depending on the size ordered, either 8, 12, 16, or 32 ounces of soup in volume; (c) the Subject Soups did not have the characteristics, ingredients, uses, benefits, or volumes as promised; and, (d) as a result, Plaintiffs and the Class members were damaged in an amount to be determined at trial.

## COUNT TWO
### Negligent Misrepresentations and Omissions
### (Brought on behalf of Plaintiffs and the Nationwide and Michigan Subclass)

30.     Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint.

31.     Plaintiffs bring this claim individually and on behalf of the proposed Class against Zoup.

32.     Zoup misrepresented that Subject Soups contained volumes of 8, 12, 16, and 32 ounces of soup and omitted disclosing that the Subject Soup containers would only be filled to a fill-to line that was lower than the represented volume.

33. Specifically, Zoup misrepresented that the Subject Soups contained: 8 ounces of soup for an 8-ounce Subject Soup, 12 ounces of soup for a 12-ounce Subject Soup, 16 ounces of soup for a 16-ounce Subject Soup, and 32 ounces of soup for a 32-ounce Subject Soup, because in fact each size of the Subject Soups contains a volume of soup that is approximately 18.75% less than was represented—and because Zoup failed to disclose to Plaintiffs and Class members in its menus or labeling that the containers in which the Subject Soups were filled would only be filled to a "fill-to" line, and that the container when filled up to the fill-to line would contain a volume of soup approximately 18.75% less than that represented by Zoup.

34. Zoup negligently misrepresented and/or negligently omitted material facts about the amount of the Subject Soup provided.

35. At the time Zoup made these representations and/or omissions, Zoup knew or should have known that these representations and/or omissions were false or made them without knowledge of their truth or veracity.

36. The negligent misrepresentations and/or omissions made by Zoup, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase Subject Soups for the price listed.

37. Plaintiffs and Class members would not have purchased Subject Soups on the same terms if the true facts had been known.

38.    The negligent actions of Zoup caused damage to Plaintiffs and Class

members, who are entitled to damages and other legal and equitable relief as a result,

in an amount to be determined at trial.

## COUNT THREE
### Fraud
### (Brought on behalf of Plaintiffs and the Nationwide and Michigan Subclass)

39.    Plaintiffs hereby incorporate by reference the allegations contained in

the foregoing paragraphs of this Complaint.

40.    Plaintiffs bring this claim individually and on behalf of the proposed

Class against Zoup.

41.    Zoup made materials misrepresentations and/or omissions by providing

Plaintiffs and Class members with false or misleading material information and

failing to disclose material facts about Subject Soups, including but not limited to

the fact that they contained volumes of 8, 12, 16, and 32 ounces of soup, respectively.

42.    Specifically, Zoup misrepresented that the Subject Soups contained: 8

ounces of soup for an 8-ounce Subject Soup, 12 ounces of soup for a 12-ounce

Subject Soup, 16 ounces of soup for a 16-ounce Subject Soup, and 32 ounces of soup

for a 32-ounce Subject Soup, because in fact each size of the Subject Soups contains

a volume of soup that is approximately 18.75% less than was represented—further,

Zoup materially omitted in its menus and/or labelling that the containers in which

the Subject Soups were filled would only be filled to a "fill-to" line, and that the

container when filled up to the fill-to line would contain a volume of soup approximately 18.75% less than that represented by Zoup.

43.    Zoup knowingly made these misrepresentations and/or omissions with the intent to induce Plaintiffs and the Class members to purchase the Subject Soups.

44.    The misrepresentations and/or omissions made by Zoup were material, because the facts would typically be relied upon by a person purchasing the Subject Soups.

45.    Plaintiffs and Class members reasonably relied upon Zoup's misrepresentations and omissions in purchasing the Subject Soups.

46.    If the misrepresentations and omissions had been disclosed, Plaintiffs and Class members would not have purchased the Subject Soups or would not have purchased the Subject Soups upon the same terms.

47.    The misrepresentations and/or omissions made by Zoup, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase the Subject Soups for the listed price.

48.    As a direct and proximate cause of Zoup's fraud, Plaintiffs and Class members have been damaged, and are entitled to damages and other legal and equitable relief as a result.

## COUNT FOUR
### Unjust Enrichment
### (Brought on behalf of Plaintiffs and the Nationwide and Michigan Subclass)

49.     Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint.

50.     Plaintiffs bring this claim individually and on behalf of the proposed Class against Zoup.

51.     Plaintiffs and Class members conferred benefits on Zoup by purchasing the Subject Soups.

52.     Zoup has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Subject Soups.  Retention of those moneys under these circumstances is unjust and inequitable because Zoup misrepresented that the Subject Soups contained volumes of 8 ounces of soup for an 8-ounce Subject Soup, 12 ounces of soup for a 12-ounce Subject Soup, 16 ounces of soup for a 16-ounce Subject Soup, and 32 ounces of soup for a 32-ounce Subject Soup.  These misrepresentations caused injuries to Plaintiffs and Class members because they would not have purchased the Subject Soups on the same terms if the true facts were known.

53.     Because Zoup's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Zoup must pay restitution to Plaintiffs and Class members for its unjust enrichment, as ordered by the Court.

## COUNT FIVE
### Breach of the Implied Warranty of Merchantability
### Mich. Comp. Laws §§ 440.2314
### (Brought on behalf of Plaintiff Morris and the Michigan Subclass)

54.    Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint.

55.    Plaintiff Morris brings this claim individually and on behalf of the proposed Michigan Subclass against Zoup.

56.    Zoup, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Subject Soups contained, depending on the size ordered, either 8, 12, 16, or 32 ounces of soup in volume.

57.    Zoup breached the warranty implied in the contract for the sale of the Subject Soups because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Subject Soups are sold to the purchaser in cartons that are underfilled, in that an 8-ounce Subject Soup does not contain a volume of 8 ounces of soup, a 12-ounce Subject Soup does not contain a volume of 12 ounces of soup, a 16-ounce Subject Soup does not contain a volume of 16 ounces of soup, and a 32-ounce Subject Soup does not contain a volume of 32 ounces of soup.  As a result, Plaintiff Morris and Michigan Subclass members did not receive the goods as impliedly warranted by Zoup to be merchantable.

58.    Plaintiff Morris and Michigan Subclass members purchased the Subject Soups in reliance upon Zoup's skill and judgment and the implied warranties of fitness for the purpose.

59.    The Subject Soups purchased by Plaintiff Morris and Michigan Subclass members were not altered by Plaintiff Morris or the Michigan Subclass members.

60.    The Subject Soups were defective when they left the exclusive control of Zoup.

61.    Zoup knew that the Subject Soups would be purchased and used without additional testing by Plaintiff Morris and Michigan Subclass members.

62.    The Subject Soups were defectively designed and unfit for their intended purpose, and Plaintiff Morris and Michigan Subclass members did not receive the goods as warranted.

63.    As a direct and proximate cause of Zoup's breach of the implied warranty, Plaintiff Morris and the Michigan Subclass members have been injured and harmed because:  (a) they would not have purchased the Subject Soups on the same terms if the true facts were known concerning the Subject Soups' volume; (b) they paid a price premium for the Subject Soups due to Zoup's promises that they contained, depending on the size ordered, either 8, 12, 16, or 32 ounces of soup in

volume; and (c) the Subject Soups did not have the characteristics, ingredients, uses, benefits, or volumes as promised.

## COUNT SIX
### Violation of Michigan's Consumer Protection Act, Mich. Comp. Laws §§ 445.901-922
### (Brought on behalf of Plaintiff Morris and the Michigan Subclass)

64.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-22 of this Complaint.

65.    Plaintiff Morris brings this claim individually and on behalf of the proposed Michigan Subclass against Zoup.

66.    Plaintiff Morris and other Michigan Subclass members were "person[s]" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

67.    Zoup was a "person" engaged in "trade or commerce" within the meaning of the Mich. Comp. Laws § 445.902(1)(d).

68.    Michigan's Consumer Protection Act ("CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.…" Mich. Comp. Laws § 445.903(1).

69.    Zoup engaged in the following unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA: "(c) Representing that goods or services have . . . characteristics . . . that they do not have"; "(e) Representing that goods or services are of a particular standard . . . [where] they are of another"; "(s) Failing to reveal a material fact, the omission of which tends to

19

mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).

70.    Zoup violated and continues to violate Michigan's CPA by, among other things: (1) misrepresenting that the Subject Soups contained volumes of 8 ounces of soup for an 8-ounce Subject Soup, 12 ounces of soup for a 12-ounce Subject Soup, 16 ounces of soup for a 16-ounce Subject Soup, and 32 ounces of soup for a 32-ounce Subject Soup, when in fact each size of the Subject Soups contains a volume of soup that is approximately 18.75% less than was represented, (2) failing to disclose to Plaintiff Morris and Michigan Subclass members in its menus or labeling the true volumes of the Subject Soups, (3) failing to disclose to Plaintiff Morris and Michigan Subclass members in its menus or labeling that the cartons in which the Subject Soups were filled would only be filled up to a "fill-to" line and that the carton when filled up to the fill-to line would contain a volume of soup approximately 18.75% less than what the carton would contain if filled up to the brim, and (4) continuing to market, advertise and sell the Subject Soups to Plaintiff

Morris and Michigan Subclass members as containing greater volumes of soup than they actually contain.

71.    Zoup engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, with respect to the sale and advertisement of the Subject Soups in violation of Mich. Comp. Laws § 445.903, including by misrepresenting the true volumes of its Subject Soups, and concealing the fact that the cartons in which the Subject Soups were sold are only filled up to the "fill-to" line.

72.    Zoup knew, or through the exercise of reasonable care, should have known, that the Subject Soups, when filled to the fill-to line, contained less volume of soup than was represented to the customer. Zoup's unfair conduct, as described herein, was and continues to be intentional, and Zoup intends for consumers to rely on its unfair and misleading practices and representations.

73.    Plaintiff Morris and the members of the Michigan Subclass were deceived by Zoup's claims that, *inter alia*, the Subject Soups contained volumes of 8 ounces of soup for an 8-ounce Subject Soup, 12 ounces of soup for a 12-ounce Subject Soup, 16 ounces of soup for a 16-ounce Subject Soup, and 32 ounces of soup for a 32-ounce Subject Soup, because in fact each size of the Subject Soups contains a volume of soup that is approximately 18.75% less than was represented, and because Zoup failed to disclose to Plaintiff Morris and Michigan Subclass members

in its menus or labeling that the cartons in which the Subject Soups were filled would only be filled up to a "fill-to" line and that the carton when filled up to the fill-to line would contain a volume of soup approximately 18.75% less than what the carton would contain if filled up to the brim.

74.    The above unfair and deceptive practices and acts by Zoup were material misrepresentations of a presently existing or past fact.

75.    The above unfair and deceptive practices and acts by Zoup were immoral, unethical, oppressive, and unscrupulous.

76.    Plaintiff Morris and the members of the Michigan Subclass relied on Zoup's representations in that they would not have purchased, chosen, and/or paid for all or part of Zoup's Subject Soups had they known that the Subject Soups were sold in cartons that would not contain the represented volume of soup. As a direct and proximate result of Zoup's deceptive acts and practices, Plaintiff Morris and the members of the Michigan Subclass suffered an ascertainable loss of money or property, as described above. Plaintiff Morris and the members of the Michigan Subclass seek relief under Mich. Comp. Laws § 445.911, including, but not limited to injunctive relief, damages, attorneys' fees and costs.

## COUNT SEVEN
### Breach of the Implied Warranty of Merchantability
### 810 Ill. Comp. Stat. 5/2-314
### (Brought on behalf of Plaintiff Galmore and the Illinois Subclass)

77.     Plaintiffs hereby incorporate by reference the allegations contained in the foregoing paragraphs of this Complaint.

78.     Plaintiff Galmore brings this claim individually and on behalf of the proposed Illinois Subclass against Zoup.

79.     Zoup, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Subject Soups contained, depending on the size ordered, either 8, 12, 16, or 32 ounces of soup in volume.

80.     Zoup breached the warranty implied in the contract for the sale of the Subject Soups because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Subject Soups are sold to the purchaser in cartons that are underfilled, in that an 8-ounce Subject Soup does not contain a volume of 8 ounces of soup, a 12-ounce Subject Soup does not contain a volume of 12 ounces of soup, a 16-ounce Subject Soup does not contain a volume of 16 ounces of soup, and a 32-ounce Subject Soup does not contain a volume of 32 ounces of soup.  As a result, Plaintiff Galmore and Illinois Subclass members did not receive the goods as impliedly warranted by Zoup to be merchantable.

81.    Plaintiff Galmore and Illinois Subclass members purchased the Subject Soups in reliance upon Zoup's skill and judgment and the implied warranties of fitness for the purpose.

82.    The Subject Soups purchased by Plaintiff Galmore and Illinois Subclass members were not altered by Plaintiff or Class members.

83.    The Subject Soups were defective when they left the exclusive control of Zoup.

84.    Zoup knew that the Subject Soups would be purchased and used without additional testing by Plaintiff Galmore and Illinois Subclass members.

85.    The Subject Soups were defectively designed and unfit for their intended purpose, and Plaintiff Galmore and Illinois Subclass members did not receive the goods as warranted.

86.    As a direct and proximate cause of Zoup's breach of the implied warranty, Plaintiff Galmore and Illinois Subclass members have been injured and harmed because:  (a) they would not have purchased the Subject Soups on the same terms if the true facts were known concerning the Subject Soups' volume; (b) they paid a price premium for the Subject Soups due to Zoup's promises that they contained, depending on the size ordered, either 8, 12, 16, or 32 ounces of soup in volume; and (c) the Subject Soups did not have the characteristics, ingredients, uses, benefits, or volumes as promised.

## COUNT SIX
**Violation of Michigan's Consumer Protection Act,**
**815 Ill. Comp. Stat. 505/1 *et seq.***
**(Brought on behalf of Plaintiff Galmore and the Illinois Subclass)**

87.    Plaintiffs hereby incorporate by reference the allegations contained in paragraphs 1-22 of this Complaint.

88.    Plaintiff Galmore brings this claim individually and on behalf of the proposed Illinois Subclass against Zoup.

89.    Plaintiff Galmore and other Illinois Subclass members are "person[s]" within the meaning of 815 Ill. Comp. Stat. 505/1(e).

90.    Zoup is a "person" within the meaning of 815 Ill. Comp. Stat. 505/1(c).

91.    The purpose of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") is to enjoin trade practices which confuse or deceive the consumer. The Illinois CFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression, or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 Ill. Comp. Stat. 505/2.

92.    In the course of Zoup's business, it willingly failed to disclose and actively concealed, suppressed, and/or omitted material information in the course of selling the Subject Soups, and Zoup engaged in unfair methods of competition or

unfair or deceptive acts or practices, including but not limited to the use or employment of deception, fraud, false pretense, false promise, misrepresentations, or concealment, suppression, or omission of any material fact, including representing that the Subject Soup has characteristics, uses, benefits, and qualities which they do not have; Zoup acted with intent that Plaintiff Galmore and other Illinois subclass members would rely upon such concealment, suppression, or omission of the material facts, in connection with the sale of the Subject Soups.

93.    Zoup violated and continues to violate the Illinois CFA by, among other things: (1) misrepresenting that the Subject Soups contained volumes of 8 ounces of soup for an 8-ounce Subject Soup, 12 ounces of soup for a 12-ounce Subject Soup, 16 ounces of soup for a 16-ounce Subject Soup, and 32 ounces of soup for a 32-ounce Subject Soup, when in fact each size of the Subject Soups contains a volume of soup that is approximately 18.75% less than was represented, (2) failing to disclose to Plaintiff Galmore and Illinois Subclass members in its menus or labeling the true volumes of the Subject Soups, (3) failing to disclose to Plaintiff Galmore and Illinois Subclass members in its menus or labeling that the cartons in which the Subject Soups were filled would only be filled up to a "fill-to" line and that the carton when filled up to the fill-to line would contain a volume of soup approximately 18.75% less than what the carton would contain if filled up to the brim, and (4) continuing to market, advertise and sell the Subject Soups to Plaintiff Galmore and

Illinois Subclass members as containing greater volumes of soup than they actually contain.

94.    In purchasing the Subject Soup, Plaintiff Galmore and the other Illinois Subclass Members were deceived by Zoup's failure to disclose or omissions in connection with their purchase of the Subject Soup.

95.    Plaintiff Galmore and Illinois subclass members reasonably relied upon Zoup's false misrepresentations and omissions.

96.    Zoup's actions occurred in the conduct of trade or commerce.

97.    Zoup's methods of unfair competition and unfair or deceptive acts or practices, deception, fraud, misrepresentation, concealment, suppression, or omission of material facts were likely to and did in fact deceive reasonable consumers, including by misrepresenting the true volumes of its Subject Soups. Specifically, Plaintiff Galmore and the members of the Illinois Subclass were deceived by Zoup's claims that, *inter alia*, the Subject Soups contained volumes of 8 ounces of soup for an 8-ounce Subject Soup, 12 ounces of soup for a 12-ounce Subject Soup, 16 ounces of soup for a 16-ounce Subject Soup, and 32 ounces of soup for a 32-ounce Subject Soup, because in fact each size of the Subject Soups contains a volume of soup that is approximately 18.75% less than was represented, and because Zoup failed to disclose to Plaintiff Galmore and Illinois Subclass members in its menus or labeling that the cartons in which the Subject Soups were filled would

only be filled up to a "fill-to" line and that the carton when filled up to the fill-to line would contain a volume of soup approximately 18.75% less than what the carton would contain if filled up to the brim.

98.    Zoup knew, or through the exercise of reasonable care, should have known, that the Subject Soups, when filled to the fill-to line, contained less volume of soup than was represented to the customer. Zoup's unfair conduct, as described herein, was and continues to be intentional, and Zoup intends for consumers to rely on its unfair and misleading practices and representations.

99.    Zoup intentionally and knowingly misrepresented material facts regarding the Subject Soup with intent to mislead Plaintiff Galmore and the Illinois Subclass.

100.    Zoup knew or should have known that its conduct violated the Illinois CFA.

101.    Zoup owed to Plaintiff Galmore and the Illinois Subclass a duty to disclose the truth in connection with the sale of the Subject Soups.

102.    Zoup's conduct proximately caused injuries to Plaintiff Galmore and the other Illinois Subclass members, as they would not have purchased, chosen, and/or paid for all or part of Zoup's Subject Soups had they known that the Subject Soups were sold in cartons that would not contain the represented volume of soup. As a direct and proximate result of Zoup's deceptive acts and practices, Plaintiff

Galmore and the members of the Illinois Subclass suffered an ascertainable loss of money or property, as described above.

103.   Plaintiff Galmore and the other Illinois Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damages as a proximate result of Zoup's conduct in that Plaintiff Galmore and the other Illinois Subclass members overpaid for their Subject Soup and did not get the benefit of their bargain, and these injuries are the direct and natural consequence of Zoup's representations and omissions

104.   Zoup's unlawful acts and practices complained of herein affect the public interest.

105.   Pursuant to 815 Ill. Comp. Stat. 505/10a(a), Plaintiff Galmore and the Illinois Subclass members seek monetary relief against Zoup in the amount of actual damages, as well as punitive damages because Zoup acted with fraud and/or malice and/or was grossly negligent.

106.   Plaintiff Galmore and the Illinois Subclass also seeks attorneys' fees, and any other just and proper relief available under 815 Ill. Comp. Stat. § 505/1 *et. seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Zoup, as follows:

a.   For an order certifying the Class(es) pursuant to Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representative of the Class(es) and Plaintiffs' attorneys as Class Counsel to represent members of the Class(es);

b.   For an order declaring that Zoup's conduct violates the statutes and common law referenced herein;

c.   For an order finding in favor of Plaintiffs and the Class(es) on all counts asserted herein;

d.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiffs' counsel their reasonable attorneys' fees and expenses and costs of suit.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand a trial by jury of all issues and claims so triable.

Dated:  May 26, 2023                  Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248-841-2200
epm@millerlawpc.com

Frank S. Hedin
David W. Hall
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
fhedin@hedinhall.com
dhall@hedinhall.com

Joseph I. Marchese
Philip L. Fraietta (P85228)
BURSOR & FISHER, P.A.
1330 Avenue of the Americas, 32nd Fl
New York, New York 10019
Tel: 646.837.7150
jmarchese@bursor.com
pfraietta@bursor.com

*Counsel for Plaintiffs and the Putative Class*